NEW YORK CENT. & H. R. R. CO. v. McGRATH.

(Circuit Court of Appeals, First Circuit. January 4, 1907.)

No. 650.

MASTER AND SERVANT—ACTION FOR INJURY OF SERVANT—QUESTIONS FOR JURY.
  In an action against a railroad company to recover for the death of a conductor who was killed in a rear-end collision, there was evidence tending to show that the rear brakeman under the deceased did not properly perform his duty under the company's rules with respect to going back and placing signals to warn following trains, although he went back equipped for that purpose. It was shown that it was the duty of the deceased, under the rules, to instruct the brakemen under him in the rules relating to their duties, and there was evidence tending to show that he did not read the rules to the brakeman in question, nor instruct him therein. *Held*, that whether such failure, if found, did or did not constitute contributory negligence which would preclude a recovery depended upon the circumstances of the case, since what would be negligence in the case of an inexperienced brakeman might not be in case of an experienced man who was known by the conductor to be already familiar with the rules, that such question was properly submitted to the jury under proper instructions, and that a verdict for plaintiff was supported by the evidence.

In Error to the Circuit Court of the United States for the District of Massachusetts.

George L. Mayberry (George P. Furber, on the brief), for plaintiff in error.

John A. Noonan (Walter I. Badger and George E. McCann, on the brief), for defendant in error.

Before PUTNAM and LOWELL, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. McGrath, on account of whose death this action was brought, was a conductor upon a railroad train, and received injuries in a rear-end collision. The question of jurisdiction was not much pressed in argument, and it would seem to be controlled by Boston & Maine Railroad v. Hurd, 108 Fed. 116, 47 C. C. A. 615, 56 L. R. A. 193.

The rearguments in this case, which were exceedingly helpful to the court, would seem to have so far simplified the situation as to require only a consideration of the single question of the conductor's care. Much stress was laid upon the carelessness of the rear brakeman, whose duty it was, under existing conditions, to walk rearward and exhibit signals to approaching trains. As evidence of the plaintiff's contributory negligence, the defendant relied upon the alleged failure of the rear brakeman to obey the rules of the railroad concerning signals, and upon the alleged failure of the plaintiff to instruct him concerning these rules, and to enforce their observation.

The evidence in favor of the railroad's position as to the brakeman's carelessness was pretty strong; and, if the case depended upon the question of the brakeman's care, and whether his want of care was an efficient cause of the injury, we should think that the verdict was not warranted by the evidence. But that is not the question. Under the Massachusetts employers' liability act, the negligence of the brakeman is not necessarily imputable to the conductor. Of course, if the carelessness of the brakeman was under the eye of the conductor, or was the result of a line of conduct which the conductor knew, or ought to have known, then quite likely the carelessness would be so far imputable to him as to prevent recovery. Whether this was so or not seems to us to be the only substantial question in the case. Under this view the inquiry presented is whether that issue was properly submitted to the jury and whether there was sufficient evidence to warrant a verdict.

There are some expressions in the charge, standing by themselves, which would seem not to have fully covered the ground upon which railroad rules governing the conduct of conductors and brakemen in respect to the movement of trains should have been submitted to the jury, but the exceptions do not sufficiently raise specific questions of that kind.

On the whole, we think the case as to the conductor's care, or want of care, was properly submitted to the jury. The trial judge, after referring to the rules and the evidence as to the substitution of one set of rules for another, told the jury broadly that:

"The company has rules for the guidance and direction of its employés in the performance of their respective duties. These rules may be said to have established a standard of the duties required of various employés by the road."

The principle of law requiring reasonable observance and enforcement of rules governing the conduct of railroad employés upon trains would not arbitrarily require the conductor to leave his car or his post of duty and follow the brakeman in order to see that he went back the required distance and placed the right signals. Nor would the fact that he did not do this have any tendency to show negligence on his part, provided he had discharged his duty in respect to instructions,

or knew from past experience and observation that the brakeman knew the rules and was performing the required duty. Therefore, the real question was whether the conductor acted reasonably under all the circumstances, and this question was clearly and properly submitted to the jury under the following comprehensive instruction:

"McGrath was bound to use such care as a reasonable and prudent person under circumstances similar to those shown to have existed in regard to McGrath on this occasion acting with proper regard to the duties and responsibilities upon him would have exercised. Here, again. all the circumstances bearing upon that question as disclosed by the evidence before you are for your consideration."

The judge also said to the jury:

"You are to consider the requirements of the rules regarding McGrath's duty in respect to brakemen and flagmen. Did he perform the duties which the rules imposed upon him with regard to brakemen, or did he not perform them? If you find that he failed to perform them, under all the circumstances, was his failure want of reasonable care on his part, and was such want of reasonable care a thing which contributed to the happening of the collision and his death?"

Some criticism is made upon that part of the instruction which, in a sense, left to the jury the question whether the failure to perform the rules amounted to want of reasonable care. Taken alone and in the abstract possibly it may be said that this was not sufficiently explained; but we must look at the whole situation.

Looking at the charge as a whole, we think it clear enough that the particular instruction objected to was intended, and the jury must have understood it, as something used in a hypothetical sense; that is to say, did the conductor's failure to read the rules, if he did fail to read them to the brakeman, result from indifference or negligence, or did the conductor fail to read the rules, if he did fail, because he knew from experience and observation as to the manner in which the brakeman discharged his duties that the brakeman was familiar with the rules, and the duty which the rules imposed? In one event it would have been responsible negligence on the part of the conductor, and in the other event something quite unnecessary, and something having no tendency to show negligence.

The particular thing relied upon in the rule is that provision which requires the conductor to instruct the brakeman as to his duties, but the failure to observe this rule literally, in practical application to a given situation, might show want of care, and, on the other hand, in a different situation it might be entirely consistent with the exercise of due care. To illustrate: If the brakeman was a green hand, and the conductor knew it, it would go without saying that the failure to instruct him and to enforce the rule would be want of care, and, if the brakeman's carelessness by reason of such failure contributed to the accident, the conductor's responsibility in respect to the consequences would be sufficient to prevent recovery; but, on the other hand, if the conductor knew the brakeman to be an experienced trainman, and knew that he was as familiar with the rules as the conductor himself, and knew from long experience and association that he was regarding the

rules and acting intelligently and faithfully upon them, it would be entirely perfunctory, so far as care is concerned, to read the rules or to give instructions to the brakeman. Under such circumstances it would be an unnecessary and useless act of supererogation.

The evidence in this case tends to show that the brakeman was a man of experience, and that he left the car in which the conductor was sitting properly equipped to give the required signals to approaching trains. It also appears that the brakeman had been previously instructed in all the duties that concerned him as rear brakeman, and that his attention had been called to rule 99, which prescribed his duties as affecting the rear end. It is true that the brakeman said upon cross-examination that he had not received instructions from McGrath, and that he was not familiar with the rules. It is also true that the brakeman told two stories about the fusee signal, one story on the direct and one on the cross. The brakeman was a witness before the jury, and the jury was entitled to consider the weight of his statements, especially in view of the fact that he was charged with being responsible for the accident. It had a right to consider whether he was telling the truth, or whether he was trying to exonerate himself by saying on cross-examination that he had not been instructed, thereby relieving himself from the weight of the responsibility of the accident. Witnesses are sometimes moved by such considerations. The jury was at liberty to take this into account, in connection with the other evidence in the case, that he had been instructed, that he was familiar with the rules, and that he had operated under McGrath and another conductor in the practical and faithful discharge of the duties which the rules required, as bearing upon the crucial question of McGrath's negligence.

It is a familiar rule that one employé may, in a sense, rely upon the expectation that other employés in the same service will exercise reasonable care in respect to duties which they know and which have been explained to them. Under the assumption that the jury found, as it properly might and probably did, under all the circumstances, including the past experience of the brakeman under other conductors, and his discharge of the duties of rear brakemen under the eye of McGrath, that he had been properly instructed, and knew the rules, no arbitrary principle of law would interpose to say that McGrath was wanting in care in not giving instructions on the particular occasion in question, because McGrath might properly enough, upon the state of facts which the jury were warranted in finding, rely upon the idea that the brakeman, properly equipped as he was upon leaving the car, would, under the rule, do what was reasonable to the end that approaching trains should be signaled.

On the whole, our conclusion is that the evidence in respect to the plaintiff's care, deducible from the whole situation, was of such a character as to warrant the verdict, and that the instructions submitting the question of care to the jury were sufficiently favorable to the railroad.

The judgment of the Circuit Court is affirmed, and the defendant in error recovers costs in this court.

. PUTNAM, Circuit Judge. I concur. In order to avoid any possible assumption that I agree that the learned judge of the Circuit Court stated the major propositions with regard to the effect of the rules of the defendant corporation involved in this litigation, I think it proper that I should add as follows: While, with reference to suits between individuals charging negligence on a defendant, a violation of municipal ordinances is only evidence of want of care, to be coupled with other proofs on that issue pro and con, yet, in a suit by a person employed by a transportation corporation for alleged negligence on the part of that corporation, the rules of the corporation governing the conduct of the plaintiff are a part of the contract between the parties and are generally imperative; and, if they have been seasonably and properly made known to him, and have been violated by him, and the violation is one of the efficient causes of the injury for which the suit is brought, this makes a complete defense. In the one case the ordinance is res inter alios; in the other the rules become a part of the contract of employment, and are positively obligatory as between the parties to the litigation. This case, however, is not so presented to us as to turn on these propositions.